FILED
DALLAS COUNTY
8/24/2017 7:54 AM
FELICIA PITRE
DISTRICT CLERK

Freeney Anita

1 SOS-E-SERVE

1 CT-E-SERVE

DC-17-10641

CAUSE NO. _____

| | | |
|---|---|---|
| YOLANDA LEFCOURT, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff* | § | |
| | § | |
| | § | |
| v. | § | G-134TH |
| | § | _____ JUDICIAL DISTRICT |
| | § | |
| | § | |
| THE HEALTH ENROLLMENT GROUP, | § | |
| INC. and FIDELITY & GUARANTY LIFE | § | |
| INSURANCE COMPANY, | § | DALLAS COUNTY, TEXAS |
| | § | |
| *Defendants* | § | |

---

### PLAINTIFF'S ORIGINAL PETITION

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Yolanda Lefcourt (hereinafter "Yolanda"), and files this *Plaintiff's Original Petition*, complaining of The Health Enrollment Group, Inc. ("HEG") and Fidelity & Guaranty Life Insurance Company (hereinafter "Fidelity"), and in support thereof would show unto this Honorable Court as follows:

### I.
### DISCOVERY CONTROL PLAN

Pursuant to Rules 190.1 and 190.3 of the Texas Rules of Civil Procedure, Yolanda alleges that discovery should be conducted under a Level 3 Discovery Control Plan.

EXHIBIT

E

tabbies'

## II.
## PARTIES AND SERVICE OF CITATION

Yolanda is a resident and citizen of the State of Texas.

Defendant The Health Enrollment Group, Inc. is a for-profit corporation engaging in business in the State of Texas and this lawsuit arises from The Health Enrollment Group, Inc.'s business in Texas, but The Health Enrollment Group, Inc. does not maintain a regular place of business in Texas and does not have a designated agent for service of process in Texas. Thus, in accordance with Texas Civil Practice & Remedies Code section 17.044, *et seq.*, among other statutes, The Health Enrollment Group, Inc. may be served through the Texas Secretary of State as agent for service of process of The Health Enrollment Group, Inc. at: Secretary of State, Service of Process, P.O. 12079, Austin, Texas 78711-2079, who will then forward service of process to: Marc C. Munoz, President and Registered Agent of The Health Enrollment Group, Inc. at its registered office: 5653 NW 117 Ave., Coral Springs, FL 33076 or to Marc C. Munoz, President and Registered Agent of The Health Enrollment Group, Inc., at the Health Enrollment Group, Inc.'s home office located at: 5701 N Andrews Way, Fort Lauderdale, FL 33309.

Defendant Fidelity & Guaranty Life Insurance Company is an insurance company registered and authorized to do business in the State of Texas and who is doing business in the State of Texas and who may be served with process by serving its registered agent for service of process: National Corporate Research, Ltd., 1601 Elm Street, Ste 4360, Dallas, Texas 75201-4701.

## III.
## JURISDICTION AND VENUE

This Court has jurisdiction of this matter as the damages suffered by Yolanda as a result of the conduct and actions of Defendants exceed the minimum jurisdictional limitations of this Honorable Court.   As required by Rule 47(c) of the Texas Rules of Civil Procedure, Yolanda's counsel states that Yolanda seeks monetary relief of over $1,000,000.   The amount of monetary relief actually awarded, however, will ultimately be determined by the trier of fact.

Venue is proper because all or a substantial portion of the events giving rise to this litigation occurred in Dallas County, Texas.   Alternatively, venue is proper pursuant to Texas Civil Practice & Remedies Code Section 15.032.

## IV.
## FACTUAL BACKGROUND

In January 2017, Yolanda and her husband Henry Lefcourt ("Henry") called HEG to acquire health insurance, including medical, dental and vision insurance.   HEG represents itself as "a full service National Health Brokerage firm specializing in helping individuals simplify the process of shopping for health insurance . . . We work with Major Insurance Companies in all 50 states, and pride ourselves in our ability to help you find the most comprehensive insurance plan for the lowest possible price."

During this enrollment process, HEG represented to Henry and Yolanda that a life insurance policy with Fidelity for $500,000 was an ancillary benefit to the other insurance Henry and Yolanda were purchasing and the life insurance could be issued for an additional $125.56 per month.   HEG additionally represented to Henry and Yolanda

that the purchase of the $500,000 Fidelity life insurance policy was necessary to achieve the low rates for the other health insurance – dental, medical and vision – being purchased by Yolanda and Henry. Based upon these representations and assurances, Henry and Yolanda agreed to purchase the Fidelity life insurance policy for $500,000 insuring Henry (the "Policy").

On this same call, HEG acquired all information for issuance of the Policy from Henry and Yolanda. Henry orally completed the application for the Policy, and Henry answered all questions of HEG for issuance of the Policy. Likewise, Henry provided all payment and financial information (credit card numbers) to HEG for the health insurance and the life insurance Policy so premium payments for the Policy and health insurance could be charged and paid by HEG. Henry confirmed the accuracy of all information and credit card numbers provided to HEG for payment of premiums.

HEG represented to Henry and Yolanda that all premium payments - including premium payments for the Policy - would be charged by HEG to the credit card on file, and likewise confirmed that it had Henry's active credit card on file to charge such premium payments. HEG represented and assured Henry and Yolanda that it would undertake the responsibility of charging the premium payments for the Policy and health insurance from the active credit card on file provided by Henry.

Additionally, HEG represented to Yolanda and Henry that "Mark" is the agent of record for the Policy. HEG further represented to Henry and Yolanda that Henry would be the insured under the Policy, Fidelity is the insurer on the Policy, and Yolanda is the sole beneficiary of the $500,000 death benefit.

Shortly after this call between Henry, Yolanda, and HEG, Yolanda contacted HEG to confirm the premium payment for the Policy had been charged to the credit card on file, as HEG represented.   On this call, HEG stated that the payment for the Policy did not go through but that it was not a problem as HEG would simply re-charge the credit card on file for the premium payment for the Policy.   HEG further represented to Yolanda that the premium payment for the Policy would be promptly charged, processed and completed and if there was an issue with the payment, Yolanda would be contacted.   Yolanda did not receive any communication or notice from HEG regarding any issue with payment.

Yolanda again contacted HEG that same day to once more confirm that the premium payment for the Policy had been processed, the credit card charged, and the Policy premium paid.   HEG *again* confirmed that the premium payment for the Policy insuring Henry had been processed, paid and was completed.

Subsequently, Henry unexpectedly died.

After Henry died, Yolanda called HEG.   At the beginning of this call, HEG confirmed with Yolanda that "Mark" is the agent of record for the Policy, the Policy is an ancillary benefit for the health insurance purchased, Henry did enroll and payments were made, credit cards are on file and active, and the next premium payment is due in February 2017 - which HEG stated would be automatically charged to the credit card on file.   Also on this call, HEG provided Yolanda the Policy number to acquire a copy of the Policy as HEG did not have a copy of the Policy.   At this point on the call, a different representative with HEG came on the line advising Yolanda that he (the representative)

did *not* see a policy number for the life insurance policy, but payments for the health insurance (medical, dental and vision) had been charged and processed although the premium payment for the Policy had not.   When Yolanda questioned this interviewing representative about the previous calls she had with HEG where she had been assured that the premium payment for the Policy had been processed and completed, the credit card on file charged, and Henry is insured with a life insurance policy, HEG admitted Henry was insured under the Policy with Fidelity for $500,000.

Subsequently, HEG has now changed its story, maintaining that Henry does not have a Policy with Fidelity because the premium payment was not processed by HEG.

Yolanda has complied with all conditions precedent and any pre-suit notice has been given or has been waived due to the statute of limitations.   Any limitations have been tolled by the discovery rule and/or fraudulent concealment.

## V.
## VICARIOUS LIABILITY
### (HEG and Fidelity)

At all pertinent times, HEG acted as an agent of Fidelity with actual and/or apparent authority to act on Fidelity's behalf to sell and procure life insurance policies issued by Fidelity to insureds and beneficiaries like Henry and Yolanda and/or was acting within the course and scope of its agency and/or authority given to HEG by Fidelity.

All acts alleged herein on behalf of HEG were done in the course and scope of its agency with Fidelity and/or with the actual and/or apparent authority of Fidelity.

The conduct of HEG is imputed to Fidelity.   Fidelity is legally responsible and

liable for HEG's conduct, misconduct, omissions, representations and/or deception. HEG's knowledge is imputed to Fidelity and any misrepresentations are imputed to Fidelity.

## VI.
## NEGLIGENCE AND GROSS NEGLIGENCE
### (HEG)

Henry and Yolanda requested HEG to procure life insurance coverage with Fidelity for $500,000 for Yolanda's benefit.   HEG, despite representing it did so, failed to procure the $500,000 life insurance Policy requested, promised and represented; failed to charge the premium payments specifically authorized and requested by Henry and Yolanda; failed to advise Henry and/or Yolanda that the coverage could not be obtained or coverage (the Policy) was not procured; failed to advise Henry or Yolanda that the premium payments were not charged or paid (despite confirming to Yolanda the premium payments had been charged and paid); and failed to advise Henry or Yolanda that the Policy was not issued.

HEG's representations, promises, actions and omissions resulted in no life insurance policy being procured for Yolanda's benefit.   HEG's actions and inactions constitute negligence and gross negligence, entitling Yolanda to actual and exemplary damages.

## VII.
## NEGLIGENT MISREPRESENTATION
### (HEG)

HEG represented to Henry and Yolanda that it secured a valid and enforceable Fidelity $500,000 life insurance Policy insuring Henry and benefitting Yolanda as the

sole beneficiary, and that premium payments would be charged to the active credit card Henry and Yolanda provided which was on file with HEG.   On at least three occasions, HEG warranted and represented that the premium payments for the Policy would be charged and paid from the active credit card on file, HEG undertook the responsibility and duty to charge premium payments for the Policy from Henry's credit card on file, and the premium payments had in fact been paid from the credit card on file.

HEG failed to notify Henry or Yolanda that it did not pay/charge the premium payments or failed to do so.   Further, HEG failed to notify Henry or Yolanda that it either could not procure the Policy requested or it failed to do so.

HEG encouraged and advised Henry and Yolanda to rely on it for coverage under the Policy.   Henry and Yolanda reasonably relied, to their detriment, on HEG to secure such Policy/coverage and to charge the required premium payments.

After Henry's death, HEG now claims it failed to charge the premium payment(s) to the credit card on file.   As a consequence of HEG's representations, actions and inactions, HEG now conveniently claims there is no Policy and no money will be paid to Yolanda.

As a result, Yolanda has suffered damages.

## VIII.
## FRAUD
## (HEG)

The conduct of HEG, as described herein, constitutes fraud.   HEG represented to Henry and Yolanda that it secured a valid and enforceable Fidelity $500,000 life insurance policy insuring Henry and benefitting Yolanda as the sole beneficiary, and

that premium payments would be charged to the active credit card Henry and/or Yolanda provided and that was on file with HEG.   HEG represented to Yolanda - on at least three occasions – that the premium payments for the Policy would be paid, HEG was undertaking that responsibility and duty to charge the premium payments for the Policy to Henry's credit card on file, the premium payments for the policy had been charged to the credit card and paid, and the premium payments were current.

HEG had no intent to charge the required premium payments for the Policy or to notify Henry or Yolanda that the Policy premium was not paid or that the Policy was not procured.   HEG failed to notify Henry or Yolanda that it either could not charge the premium payments or failed to do so.   Likewise, HEG failed to notify Henry or Yolanda that it either could not procure the Policy requested or failed to do so.

HEG encouraged Henry and Yolanda to rely on these representations as well as others, and Henry and Yolanda reasonably relied on HEG's representations to charge the applicable premiums for the Policy and to secure the Policy/coverage requested.

After Henry's death, HEG claims it failed to charge the premium payments for the Policy.   As a consequence, HEG alleges that there is no life insurance policy covering Henry and no money will be paid to Yolanda, thereby causing Yolanda damages.

## IX.
## VIOLATIONS OF THE TEXAS INSURANCE CODE AND TEXAS DECEPTIVE TRADE PRACTICES ACT
### (HEG)

The conduct of HEG, as described herein, constitutes violations of *Tex. Bus. & Comm. Code Ann.* § 17.46(b) and *Tex. Ins. Code Ann.* §§ 541.051 and 541.061 in one or more of the following particulars:

a. Causing confusion and/or misunderstanding as to the source, approval and/or certification of the Policy, including that Henry was insured by Fidelity for $500,000 payable to Yolanda upon Henry's death, as more fully described herein;

b. Causing confusion and/or misunderstanding about the affiliation, connection or association with, or certification by, another as it relates to the Policy, including that Henry was insured by Fidelity for $500,000 payable to Yolanda upon Henry's death and payments for the Policy had been made, as more fully described herein;

c. Representing that the Policy has approval, characteristics, uses and/or benefits, that it did not have or that the Policy was of a particular standard or grade that it was not, including that Henry was insured by Fidelity for $500,000 payable to Yolanda upon Henry's death and payments for the Policy had been made, as more fully described herein;

d. Representing that the Policy confers or involves rights, remedies, or obligations which it does not have or involve, as more fully described herein;

e. Failing to disclose information about the Policy and the payments for same that was known at the time of the transaction, as the failure to disclose was intended to induce Henry and Yolanda to enter into a transaction that they would not have entered into if the information had been disclosed, as more fully described herein;

f. Engaging in an unconscionable action or course of action relating to the Policy, the sale of same, and payments for the Policy, as more fully described hereon;

g. Misrepresenting material facts relating to the Policy, terms of the Policy, coverages and the benefits or advantages promised by the Policy, including representing that premium payments had been paid, the Policy procured, Henry

was insured, and payment of $500,000 would be made to Yolanda upon Henry's death, as more fully described herein;

h. Making untrue statements of material fact relating to the Policy and making a statement in a way that would lead a reasonably prudent person to a false conclusion about a material fact, including representing that premium payments had been paid, the Policy procured, Henry insured, and payment of $500,000 would be made to Yolanda upon Henry's death, as more fully described herein;

i. Leaving out a material fact so that other statements are rendered misleading, including representing that premium payments had been paid, the Policy procured, Henry insured, and payment of $500,000 would be made to Yolanda upon Henry's death, as more fully described herein;

j. Failing to state a material fact necessary to make other statements not misleading, including failing to advise Henry and Yolanda that the premium payments for the Policy had actually not been charged (after confirming they had been) and failing to advise Henry and Yolanda that the Policy had not been procured and issued after representing it had been, as more fully described herein; and

k. Failing to disclose a matter required by law to be disclosed regarding the Policy, including that HEG failed to charge the premium payment for the Policy from the active credit card on file after HEG represented that it would undertake such responsibility, such payment had been made and the premiums were current for the Policy.

These acts were a producing cause of Yolanda's damages. Such conduct was committed knowingly or intentionally entitling Yolanda to extra, additional, double and/or treble damages.

## X.
## DAMAGES AND ATTORNEYS' FEES

As a result of the conduct of Defendants, Yolanda has incurred damages and been damaged in a sum in excess of the minimal jurisdictional limits of this Court, which is no less than the face value of the $500,000 life insurance Policy.

Yolanda also rightfully seeks recovery of all extra, additional, double and/or

treble damages and any and all other damages as allowed and defined by statute or common law for the knowing and intentional conduct of Defendants.

As a result of the foregoing, Yolanda was forced to employ the services of The Law Office of Mark A. Ticer to protect and prosecute her interests and claims in this matter. Yolanda seeks recovery of her reasonable attorney's fees for the prosecution of this case, all necessary original proceedings, and all related appellate matters.

In addition, Yolanda hereby makes demand of Defendants to pay all costs of court related to the prosecution of this matter.

## XI.
## JURY DEMAND

Yolanda hereby respectfully requests a trial by jury.

## XII.
## DISCOVERY

Attached to this Original Petition are: (1) Plaintiff's Request for Disclosure to Defendants; (2) Plaintiff's Request for Production to Defendants; (3) Notice of Intent to Take the Oral Deposition *Duces Tecum* of The Health Enrollment Group, Inc.; and (4) Notice of Intent to Take the Oral Deposition *Duces Tecum* of the Organizational Representative for Fidelity & Guaranty Life Insurance Company.

## XIII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Yolanda prays that Defendants be cited to appear and answer herein, and that upon final trial of this matter, Yolanda has:

1.      Judgment against Defendants, jointly and severally, for a sum in excess of the minimal jurisdictional limits of this Court;

2.      Judgment for all extra, additional, double and/or treble damages under the Texas Insurance Code and Texas Deceptive Trade Practices Act;

3.      Judgment for all pre-judgment and post-judgment interest for which Yolanda may show herself to be justly entitled and at the maximum legal rate allowable by law;

4.      Judgment for reasonable attorney's fees;

5.      Judgment for all costs of court; and

6.      Judgment for all such other and further relief, whether at law or in equity, to which Yolanda may show herself to be justly entitled.

Respectfully submitted,

LAW OFFICE OF MARK A. TICER

By: */s/ Jennifer W. Johnson*
        Mark A. Ticer
        State Bar #20018900
        mticer@ticerlaw.com
        Jennifer Weber Johnson
        State Bar #24060029
        jjohnson@ticerlaw.com
        10440 N. Central Expressway
        Suite 600
        Dallas, Texas 75231
        (214) 219-4220
        (214) 219-4218 (FAX)

*ATTORNEYS FOR PLAINTIFF*