UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| YOLANDA LEFCOURT, ) <br> ) <br> Plaintiff, ) <br> ) <br> VS. ) <br> ) <br> THE HEALTH ENROLLMENT ) <br> GROUP, INC., ) <br> ) <br> Defendant. ) | CIVIL ACTION NO. <br><br> 3:17-CV-2617-G |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant The Health Enrollment Group, Inc. ("HEG") to dismiss the claims of the plaintiff Yolanda Lefcourt ("Lefcourt") (docket entry 45). For the reasons set forth below, the motion is denied.

## I. BACKGROUND

HEG, a national health brokerage firm, "'specializ[es] in helping individuals simplify the process of shopping for health insurance . . . .'" Plaintiff's First Amended Complaint ("Complaint") (docket entry 34) ¶ 9.

In January 2017, Lefcourt and her husband, Henry Lefcourt, contacted HEG telephonically to acquire health insurance, including medical, dental, and vision

insurance.  *Id.* ¶ 8.  During this enrollment process, HEG allegedly represented to the Lefcourts that a $500,000 life insurance policy ("the Fidelity Policy") issued by Fidelity & Guaranty Life Insurance Company ("Fidelity") was an "ancillary benefit" to the health insurance that the Lefcourts planned to purchase, and that the Fidelity Policy could issue for an additional $125.56 per month.  *Id.* ¶ 10.  HEG additionally told the Lefcourts that their purchase of the Fidelity Policy "was necessary to achieve the low rates for the other health insurance – dental, medical and vision . . . ."  *Id.*  Based upon these representations, the Lefcourts agreed to purchase the Fidelity Policy, naming Henry Lefcourt as the insured and Lefcourt as the sole beneficiary.  *Id.* ¶¶ 11, 14.  During this same phone call, Henry Lefcourt "orally completed the application for the [Fidelity] Policy, and Henry [Lefcourt] answered all questions of HEG for issuance of the [Fidelity] Policy."  *Id.* ¶ 12.  Additionally, Henry Lefcourt "provided all payment and financial information (credit card numbers) to HEG for the health insurance and the [Fidelity] Policy so premium payments for the [Fidelity] Policy and health insurance could be charged and paid by HEG."  *Id*.  HEG allegedly assured the Lefcourts that HEG would charge all of premium payments, including premium payments for the Fidelity Policy, to Henry Lefcourt's credit card on file, and that "Mark" was the agent of record.  *Id*. ¶¶ 13, 14.

Thereafter, Lefcourt followed up twice with HEG to confirm that HEG had processed the payment for the Fidelity Policy.  *Id*. ¶¶ 15, 17.  On the first follow up

call, Lefcourt asserts that HEG informed her that the payment had not gone through, but that HEG promptly would recharge it. *Id*. ¶ 15. On the second follow up call, HEG represented that Henry Lefcourt's payment on the Fidelity Policy had been "processed, paid and was completed." *Id*. ¶ 17.

Henry Lefcourt later unexpectedly died. *Id*. ¶ 18. Lefcourt then called HEG, at which time an HEG representative "confirmed with [Lefcourt] that 'Mark' is the agent of record for the [Fidelity] Policy, the [Fidelity] Policy is an ancillary benefit for the health insurance purchased, Henry [Lefcourt] did enroll and payments were made, credit cards are on file and active, and the next premium payment is due in February 2017 - which HEG stated would be automatically charged to the credit card on file." *Id*. ¶ 19. While on the call, Lefcourt contends "HEG provided [her] the [Fidelity] Policy number to acquire a copy of the [Fidelity] Policy as HEG did not have a copy of the [Fidelity] Policy." *Id*. ¶ 20. Lefcourt asserts that during the call a different HEG representative "came on the line advising [her] that he (the representative) did *not* see a policy number for the life insurance policy, but payments for the health insurance (medical, dental and vision) had been charged and processed although the premium payment for the [Fidelity] Policy had not." *Id*. ¶ 20 (emphasis in the original). In response, Lefcourt told that representative that HEG had previously "assured [her] that the premium payment for the [Fidelity] Policy had been processed and completed, the credit card on file charged, and Henry [Lefcourt]

is insured with a life insurance policy, HEG admitted Henry [Lefcourt] was insured under the [Fidelity] Policy . . . for $500,000." *Id*. ¶ 21. According to Lefcourt, "HEG has now changed its story, maintaining that Henry [Lefcourt] does not have a [p]olicy with Fidelity because the premium payment was not processed by HEG." *Id*. ¶ 22. Conversely, HEG maintains that there is no evidence that HEG failed to procure a life insurance policy to pay life insurance benefits to Lefcourt. *See generally* Memorandum of Law in Support of Defendant The Health Enrollment Group, Inc.'s Motion to Dismiss ("Motion") (docket entry 46); see also *id*. at 2 ("Put simply, Lefcourt cannot claim that HEG has caused her damages by failing to procure and pay her on a life insurance policy without stating facts showing that payments would be due to her under the terms of that policy (had it ever been paid for)").

On August 24, 2017, Lefcourt filed this suit against HEG and Fidelity in the 134th Judicial District Court of Dallas County, Texas, to recover benefits under the Fidelity Policy. *See* Notice of Removal (docket entry 1) ¶ 1; *see also* Plaintiff's Original Petition, *attached to* Notice of Removal as Exhibit E. On September 25, 2017, Fidelity removed the case to this court based on diversity of citizenship.[1] *See generally* Notice of Removal. HEG consented to the removal. See *id*., Exhibit C. Lefcourt alleges that HEG failed to procure the Fidelity Policy as represented to the

---

[1] On December 21, 2017, Lefcourt dismissed her claims against Fidelity. *See* Stipulation of Dismissal as to Defendant Fidelity & Guaranty Life Insurance Company Only Without Prejudice (docket entry 13).

Lefcourts and thus Fidelity has failed to pay her benefits under the Fidelity Policy. *See generally* Complaint; Plaintiff's Response in Opposition to Defendant The Health Enrollment Group, Inc.'s Motion to Dismiss ("Response") (docket entry 47) at 11. Lefcourt asserts claims for (1) negligence, (2) gross negligence, (3) negligent misrepresentation, (4) fraud, (5) violations of the Texas Deceptive Trade Practices Act ("DTPA"), and (6) violations of the Texas Insurance Code. *Id*.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), HEG moves to dismiss Lefcourt's claims against it. *See generally* Motion; see also *id*. at 1 ("Lefcourt fails to plead sufficient facts as to the existence of elements common to each and every cause of action: i) causation and ii) damages.").

## II. ANALYSIS

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted). "Factual allegations must be

enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id*. (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id*. The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id*. at 678. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to

relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" her claims against the defendant "across the line from conceivable to plausible." See *id*. at 679, 683.

Under Federal Rule of Civil Procedure 9(b), a plaintiff must state with particularity the circumstances establishing a claim of fraud.[2] Fed. R. Civ. P. 9(b). What constitutes particularity will "necessarily differ with the facts of each case." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992). At a minimum, courts require the plaintiff to specifically state the time, place, and contents of the alleged false representation, as well as the identity of the person making the alleged misrepresentation and what that person obtained thereby. See *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir.) (citing *Tuchman v. DSC Communications Corporation*, 14 F.3d 1061, 1068 (5th Cir. 1994)), *cert. denied*, 522 U.S. 966 (1997); *United States ex rel. Doe v. Dow Chemical Company*, 343 F.3d 325, 328 (5th Cir. 2003) ("At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud.") (citation omitted). "Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim."

---

[2] Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id*.

*Hart v. Bayer Corporation*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citing *Tuchman*, 14 F.3d at 1067). Dismissal of a fraud claim for failure to plead the claim with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6). See *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

The thrust of the motion to dismiss is that Lefcourt has failed to state claims upon which this court could grant her relief. The court concludes, however, that Lefcourt sufficiently pleaded her fraud claims with particularity, and that HEG failed to show that Lefcourt could prove no set of facts in support of her claims that would entitle her to relief. See *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205.

### III. CONCLUSION

For the reasons stated above, the motion to dismiss is **DENIED**.

**SO ORDERED.**

September 5, 2019.

_A. Joe Fish_
**A. JOE FISH**
**Senior United States District Judge**